Good morning. My name is Keith Flicker from Flicker Gallatin Associates here on behalf of Chugach and Syracuse American Insurance. And I appreciate the opportunity to present to our audience on this case, which is one of, actually, first impression. In the long history of the Facts-Based Act, this is the 65-year-old history of the Special Nature Doctrine, which is critical to the issues of compatibility with the Defense-Based Act. This is the first... Before we go there... I'm sorry. I want you to know, for interviews of the mootness, I was having some trouble figuring out whether or not this case was moot or not. Can you help me understand that? Because... I didn't make that moot argument, but I will address it later. It was referenced, I think, by the... Director. Yes, that he moot, so it's our duty to find out. It is not moot because there is the possibility in this particular case that further benefits will be paid. Can you explain to me how that is? Under what provision? Very generally, Mr. Jetnil suffered a loss of his leg below the knee. That amputation translates into temporary total disability benefits entitlement for the period that he's out of work. Afterwards, it can convert into a permanent partial disability schedule, or in the end, for eight weeks. And those awards are provided posthumously also. So was that declaration made that it was partial permanent? It hasn't been addressed because while this case was pending, Mr. Jetnil passed away, which also, in addition to the posthumous award for the scheduled loss to his leg, raises the possibility of a payment by his exterior dependents under the argument that it was this incident that caused him to pass away. That is in dispute, of course, but the posthumous schedule is not in dispute. And would the KDW be castigating that you filed your appeal in this case? Have I filed my appeal before? I thought it was the other way around. What date did you file your appeal? It would be in July of 2016. Do you want me to ask another one? It says that Mr. Jetnil probably petitioned for an appeal at the 9th Circuit on September 16, 2015. Is that right? And then Mr. Jetnil then died on May 10, 2015. I don't know if that matters or not, but it's- Well, I think it does not matter because of the fact that the claim is not moot to the extent that there remain allegations under 52. But is it not under 908 C-15? Which provision would it be that it's not good under? Why is he now- you say he hasn't been officially declared permanent and personal at this point, but he will be. Right now, he's temporary total. Right now, the way the act works on the ground is that once the man- even though the man has claimed because of the very difficult communication problems of communicating with him. Again, that is the legislature's issue. To the extent I didn't raise and I helped raise the issue of mootness, let me be responsive to your question in this way. Under section 908 C, there were schedules for loss of body parts arising out of compensable injuries. Until he passes away, the claim is temporary total in this circumstance. And then once he passes away, he's no longer, to this common sense, why he's no longer temporarily totally disabled. What price is, at that point, a permanent partial disability that currently can be awarded and is awarded under this law of posthumous notice? And then there's a specific case, specific to speed and repair, kind of fabrication versus director of office, work works comp. It seems like Woods says that if you give him the amount that's required, that's all that's required, here you've paid out $98,000, is that right? And that would be for his lost plagiarity capacity since the date of the injury until the date of his death. And that $60,000 that we're talking about, is $60,000 he can get in addition to that? Correct. Under what provision? Under section 908 C, the provision that provides for a permanent partial schedule of the loss of a leg. But you said he hasn't been, is he automatically in permanent partial? I think that's where I was getting hung up on. He hasn't been pursued because of this issue whether or not the case is compensable at all. So if the case is not compensable on the ground, that there's no other special injury that doesn't exist, and it's not a compensable injury, then he would not get the posthumous award, let me say it this way. Once the ALJ issues the decision that it's compensable, we have today temporary total disability benefits. Going forward, there's been no administrative determination of the schedule, and that's essentially, I believe, and I'm not speaking just on behalf of the claimant, that's essentially been put on hold while they address this important issue of compensability at all. Thank you. I hope that's easy. At least quite easy. I hope that's consistent. It's confusing that it's posthumously awarded, and it doesn't exist in a lot of different compensation systems, but does exist in this federal system. Now, what I have with me to present to the court is what I believe is a seminal issue in this important industry of providing overseas support, private contracting support, and national defense, national security, and humanitarian industries, which is whether or not local individuals working in their home country, such as Mr. Jenner working in his home country of the Republic of Washington, is entitled to the expansion of compensability, which the Assault of Special Dangers Act has. To go back into the history of this home, and then it starts Frank White and Justice Frankfurt, his decision, and then O'Keefe, which discusses, of course, that given the far-flung nature of the overseas foreign employment, that there are risks that are presented, and considerations should be given not only, of course, in the compensation system to what happens when a guy is on a job or a guy when he's on a job, but also what the incidents, obligations, and conditions of employment expose the worker to. Consistently through that case and the three cases that Justice Souter, excuse me, discussed, and we did see the case. Justice Souter was sitting by designation for a circuit decision a couple of years ago, which addressed the assault of special danger, and he took the opportunity to explore those three important Supreme Court cases. And everyone always comes back to the fact that these are distant, far-flung workers. People who are working for these contractors are dedicated to these jobs. They may not be on call 24-7 like Jenner was. But still, generally, they're people who hold on to their jobs, and this is why they need special protection in the space of the country. Where in O'Leary or Kalama case does the court expressly discuss whether the claimant was a U.S. citizen or a foreign national? He was never discussed in any of the cases. That is correct. Be cautious in considering that point of view. Did he discuss citizenship in any way as part of their analysis? No, he did not. Okay. So, I'm trying to figure out what's your best story, because it's also a language of the Longstorm Harbors Workers' Compensation Act and the Defense Base Act do not distinguish or delineate anything between U.S. citizens and nationals. Well, they do. If I may, I'd like to reserve three minutes, if I can, for rebuttal. No, it goes to the actual Defense Base Act, and it's critical to understand that local nationals can be treated differently and are, by Congress, in the actual law. There are several circumstances that local nationals are, by statute, treated differently. For example, you can have that they are entitled to in-depth beneficiaries. The list of dependents and beneficiaries is significantly less than they are afforded, and it's then that Congress is capable of making the distinction in writing it in the language when they need to. But they didn't in this conversation. Okay. Fair enough. But to the extent that it was never addressed, it was never raised by myself, and I deal with this every day, it was never addressed before. And so what Congress did, according to this list of reminders, what Congress did when it passed this 1958 amendment does not conform or confirm that Congress knew better, and by not acting on it, included local nationals. I think it's virgin territory. And the reason why it's important is because it essentially, the way these special needs doctors interpret it now, it essentially would make the act a 24-7 cover for a disability or a life insurance policy or a health insurance policy, which everyone, in every case, says it's not fair. Well, Director, and you're a part of it, don't be tentative to say that this was a special situation for a local, let me say it's a place where he's canopying, he can't be there without the employer's license, no one else could go there. He'd sit there in his jeep and he'd see me and his co-workers, there's nobody else there. There's a person there for four days or something while they're working, and that's a special situation. It doesn't cover him in the rest of his employment. But to do what? To fish. Coral reef fishing is a hobby, a sport, it's something they don't do with the money, but they do this as they do. It is ingrained in the culture of me. Sure, it was foreseeable that they were going to find fish in there, but the fact is, he didn't do anything that was critically an incident or an obligation of his employment. Well, that's the whole purpose of an insurance, especially an insurance profession. Exactly. In terms of insurance and reef fishing, there's nothing that doesn't indicate at all that it's an obligation. It's a personal matter. Do you mean exactly that? I understand your argument that when you say exactly in response to Judge Campy's question, that's what the zone of special danger doctrine does. But this was not an obligation. His reef fishing was not a special or an obligation. He fished well everywhere. It's obsessed that you don't use this regular scope of employment analysis in an area of special danger. Well, to have a company, a local agency, and consider it to be a special danger, danger, danger is the key, whether it's special or particular. I would say, but what if you were a U.S. citizen, and all these circumstances happened, if he was a U.S. citizen, would you think that he would? Absolutely. Okay. What's the difference here? Because by all accounts, either he, Mr. Jett, or a U.S. citizen would have been, had to be transported from somewhere to this gate in the island, which was isolated, correct? That's correct. Extremely? As much as the rest of the islands, but yes, correct. Islands. Yeah, but that's, I mean, he was transported there by Chugach, right? To go and work for the port, or the place there, if you use the picture, right? Right. So, I'm trying to understand what the difference is. I mean, the fact that he lived in an adjacent, or, you know, an island nearby, why does it matter? If the citizen was coming from the same island he was coming from, why does it matter if he's being transported? In this case, it sounds like an even more isolated island, and had very limited, you know, resources. This seems like what the Zone of Special Danger doctrine's about. That would make every ubiquitous activity covered, as long as the Department maintains defense foreseeable. Of course, this was foreseeable here. You might have a different, this might be a more interesting case, if he'd been injured on his own island, and working for the government, but he wasn't injured on his own island. Does that make it foreign travel, or overseas? I mean, since what data, what the U.S. Supreme Court, and every other court has always said, is foreign, overseas travel, is going from, say,  Counsel, did he have an option to return to Third Island, where he lived? At night, he didn't have an option. No, he didn't. And the conditions on Gagin Island, were not any different for him, than they would have been for U.S. citizens. You admit that, correct? Agreed, yes. Was there any prohibition against re-fishing, on Gagin Island, during non-work hours? No, there was not. You said it was dangerous, everybody knows it, but it was not prohibited. That's correct, it did not be prohibited. And wasn't it likely, and isn't it likely, that the workers often do this? He's first year, to doing this. So, leisure activities are limited, by whatever is available, which isn't much. And, re-fishing is, probably going to be one of them, in fact, was, correct? Correct. Alright. So, what cases do you have, that deny benefits to local nationals, on the basis, that the zone of special danger doctrine, is inapplicable, as a matter of law? There are no cases, because, this is the first one. Well, you, but you also argue, that the, that no court does apply, zone of special danger. Sorry, excuse me. You, but you also argue, that the, court, has not applied, zone of special, special danger doctrine, to, local nationals. Well, I just, highlighted that, you made that bar, actually, that's, original. Actually, all I meant to say, by that, is exactly what I'm saying, and it's a little bit strange. Okay, so you want to, sit down, I'll give you a couple minutes. Are you sure you can? Sure, of course. Hi, my name is Patrick Scruggs, and I represent, Ketlin General. I don't often agree, with, petitioner's counsel, but I will, agree with him, on the, movements issue. Um, sexual disability, benefits, are, doing payable, it was, in essence, admitted, in the petitioner's brief, and for that reason, I don't believe, the case is moved. And so, do you agree with him, that after, I guess, this is resolved, then you would proceed, to having him, designated, I guess, under 908, C, P, or, I believe it's four, I believe it's the correct, citation. Yes, um, we will, we will pursue those, um, sexual disability benefits, up to $60,000, as part of the amputation, of his leg, below the knee. And so, he would be entitled, to not just what he's being given, the 98,000 plus, he would be entitled, to $16,000. Correct. Correct. Thank you. Um, I would like to raise one point, um, petitioner's counsel, uh, also mentioned that, it raises the possibility,  under, under the Longshore Act, and Defense Base Act, a, a death claim, is separate and distinct, from, from an interview, what it's called. Um, and, and that possibility, does not make, the case moot. I don't think there's any question of that. Um, getting to the merits of the case, the petitioner argues, that what is needed, is common sense, everyday, realistic analysis, of both, the applicability, of the zone of special danger, to local nationals,   home country, and as to whether, the, uh, there was substantial evidence, that supported the ALJ, and BRB, as well as, the, the, the, the, the decisions. Uh, I'm a little bit, I'm going to jump ahead, to the substantial evidence standard, because I thought I heard, uh, the petitioner's counsel, note that, if, if that U.S. citizen, in the same, in the same situation, he would have been covered. So, that, uh, seems to be an admission, that there was substantial evidence, uh, in this case. Although, I will deal with that issue, a little bit later. But we agree, with this common sense, everyday analysis standard, and we, uh, believe that the court, uh, should rule as a matter of law, there's no legal reason why, some of the special dangers, cannot apply to a local national. Every case that's, uh, that's decided, this issue, has taken the position, that you look at the totality, of the circumstances, of the case, and nobody's ever mentioned, uh, in these cases, the nationality of the climate, issue. And we are doing, what the nationality was, in the West Indies. That's correct. I think, I think, there may have been one case, where the nationality, was mentioned, but it was, it was simply, done in passing. So, with me concerned, it seems like, uh, reef fishing, is a recreational activity, is that right? Well, it's, it, it certainly has been, uh, uh, described that way, uh, in fact, the petitioner, uh, uh, trumpeted that, the customer practice, of reef fishing, in the Marshall Islands. But, but, it doesn't matter, whether it's a recreational activity, or he's doing it for sustenance. Well, if, let's say, he would have fished, on the RMI island, he was staying, it seems like, that's what he was doing, right? Right. So, doesn't this, um, decision, or the BRB, uh, create, um, as, Mr. Flicker argues, on behalf of his client, perhaps, his liability rule, where, that would lead, to the, result, that, uh, covering local nationals, or any injury that occurs, in their country. No, it doesn't, uh, the, the obligations, and conditions of employment, must place him, in that zone, of special danger. If he was in his own, uh, home island, the third island, the obligations of employment, arguably, would not place him, in his own, special danger, if he got off work, and, uh, during this, this family of threats, uh, to feed his family. Uh, the, the other thing is that, that, that it's not a premises liability issue, much more, more has to be shown in this case, you have to show foreseeability, and reasonableness of the activity. So, it's just not, it's not a, in no, no court has ever, stated, that it's a premises liability issue. And that's, that's a little bit overbroad, although, you know, I will agree, when you read all these cases, people making out in vehicles, and, and, and, misbehaving in bars, and, and such, these cases, it looks like a premises liability issue, but when you look at the cases, and the discussions with the cases, there's more to it than that. The, the, the Congress has had,    uh, to, uh, apply only to you, and,
judges: Canby, Murguia, Rufe